IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MADELINE C. SHERIDAN,**

        Plaintiff,

        v.                                No. 10-cv-775-PK
                                              OPINION AND ORDER

**PROVIDENCE HEALTH &**
**SERVICES–Oregon,**

        Defendant.

Stephen L. Brischetto
521 S.W. Morrison Street, Suite 1025
Portland, Oregon 97205
        Attorney for Plaintiff

Janine C. Blatt
Jeffrey Julius Druckman
Druckman & Blatt, PC
0424 S.W. Iowa Street
Portland, Oregon 97239
        Attorneys for Defendant

Opinion and Order, Page 1

**SIMON, District Judge:**

## I. INTRODUCTION

Plaintiff Madeline C. Sheridan brings this action for employment discrimination against Providence Health & Services ("Providence"), asserting four claims for relief: (1) Providence's termination of her employment because of her age violated Plaintiff's rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* and Or. Rev. Stat. § 659A.030(1)(a); (2) Providence failed to reasonably accommodate Plaintiff's disabilities, causing her termination of employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and Or. Rev. Stat. § 659A.112; (3) Providence denied or interfered with Plaintiff's exercise of medical leave to which she was entitled under the Federal and Oregon Family and Medical Leave Acts, ("FMLA" and "OFLA" respectively), 29 U.S.C. § 2611 *et seq.* and Or. Rev. Stat. § 659A.183, and (4) Providence "harassed, disciplined and constructively discharged plaintiff because of one or more of her age, her disabilities, a false perception of disabilities or because plaintiff opposed unlawful employment practices in the workplace."

On September 6, 2011, the Honorable Paul Papak, United States Magistrate Judge, filed Findings and Recommendation ("F & R") (Doc. # 42). The matter is now before me pursuant to the Magistrates Act, 28 U.S.C. § 636(b)(1)(B), and Rule 72(b) of the Federal Rules of Civil Procedure. Under the Magistrates Act, the court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations

to which objection is made." *Id*; Fed. R. Civ. P. 72(b)(3); *Dawson v. Marshall,* 561 F.3d 930, 932 (9th Cir. 2009). De novo review means that the court "considers the matter anew, as if no decision had been rendered." *Dawson,* 561 F.3d at 933.

Plaintiff has filed timely objections to Judge Papak's recommendation that Providence's motion for summary judgment (Doc. # 23) be granted on the claims for age discrimination, disability discrimination, perceived disability discrimination, and retaliation, and denied on the claims under the ADA and Oregon law for failure to provide reasonable accommodation, and the FMLA and OFLA claims. Upon de novo review, I adopt the F & R.

## PLAINTIFF'S OBJECTIONS

A.   Age Discrimination Claim

   1.   "Adverse employment action"

Plaintiff objects to the recommendation that Providence be awarded summary judgment on her age discrimination claim, based upon Judge Papak's finding that she had failed to offer prima facie evidence of an adverse employment action. Plaintiff argues that the recommendation is inconsistent with Judge Papak's conclusion that Plaintiff had offered evidence that a work plan given to Plaintiff was implemented for discriminatory reasons rather than to mitigate performance problems.

In the discussion of Plaintiff's discrimination and retaliation claims, Judge Papak observed,

> First, Sheridan offers some direct evidence that a Providence nurse manager sought to remove older nurses. Specifically, Putzier's comments to Jack Keegan in 2007 indicate[] that Putzier was engaged in a prolonged effort to replace older nurses on the unit. Moreover, in light of her statement to Keegan, Putzier's comment that Sheridan was "burnt out" suggests that Putzier included Sheridan in the group of older nurses who needed to be replaced.

Opinion and Order, Page 3

> Additionally, Sheridan offers some specific and substantial circumstantial evidence that Providence implemented Sheridan's work plan for discriminatory reasons rather than to mitigate Sheridan's performance problems. . . . Although resource nurse Dawn Hersberger testified Sheridan's work plan merely reiterated Providence policy and sound nursing practice, she declared that the absolute requirements of the work plan were not practically achievable. Thus, Hersberger's account suggests that even if Providence had legitimate concerns about Sheridan's nursing performance, the particularly strict work plan it imposed would virtually ensure Sheridan's failure. In sum, if Sheridan managed to establish that she suffered an adverse employment action, she would create a genuine issue for trial on her age discrimination claim.

F & R pp. 34-35.

ADEA claims are analyzed under the three-stage burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See, e.g., Diaz v. Eagle Produce Ltd. Partnership,* 521 F.3d 1201, 1207 (9th Cir. 2008). Under *McDonnell Douglas,* a plaintiff must first make out her prima facie case of discrimination by showing: (1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment action; and (4) more favorable treatment given to similarly situated individuals outside the protected class. *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir. 2008). An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment. *Chuang v. Univ. of Cal. Davis. Bd. of Trustees,* 225 F.3d 1115, 1126 (9th Cir. 2000). At summary judgment, the burden of establishing a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Davis,* 520 F.3d at 1089.

If the Plaintiff establishes her prima facie case, the burden shifts to Providence to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Diaz,* 521 F.3d at 1207. If Providence meets this burden, Plaintiff must then prove that the reason advanced

Opinion and Order, Page 4

by Providence constitutes mere pretext for discrimination. *Id.* To do so, Plaintiff must raise a genuine issue of fact on whether the facially legitimate reasons proffered for the adverse employment action are pretextual, either directly, by persuading the court that Providence's likely motive was discrimination, or indirectly, by showing that Providence's proffered reason is unworthy of credence. *Id.* at 1212.

Plaintiff asserts that because Judge Papak concluded there was evidence of pretext in the work plan and the accompanying "excessive" monitoring and supervision, Providence's implementation of the work plan constituted an adverse employment action. She relies on cases holding that being assigned different or more burdensome responsibilities can be an adverse employment action. *See, e.g., Kortan v. California Youth Auth.,* 217 F.3d 1104, 1113 (9th Cir. 2000); *Davis,* 520 F.3d at 1089. She argues that because Judge Papak's factual findings "show that Providence took adverse actions against plaintiff" and because Judge Papak "never ruled on whether the series of discriminatory acts directed at Sheridan were actionable as adverse employment decisions," Judge Papak erred in recommending dismissal of the age discrimination claim. I find Plaintiff's argument unpersuasive.

Judge Papak's factual findings about the work plan went to the issue of *pretext,* not to the "adverse employment action" part of Plaintiff's prima facie case. As Providence points out, Plaintiff pleaded her age discrimination claim as based solely on her termination, not on the basis of the work plan or excessive supervision. *See* Compl. ¶ 37. In addition, even assuming that the work plan was an adverse employment action does not save Plaintiff's age discrimination claim because Plaintiff has presented no evidence that similarly situated younger individuals were treated more favorably with respect to work plans. *See, e.g., Vasquez v. Cnty. of Los Angeles,*

349 F.3d 634, (9th Cir. 2003)(two individuals not similarly situated because comparator did not engage in problematic conduct of comparable seriousness). Regardless of whether Plaintiff's age discrimination claim is based on her termination or on implementation of the work plan, the claim fails. Plaintiff was not terminated and failed to establish constructive discharge. Also, Plaintiff has not demonstrated a genuine issue for trial on whether similarly situated younger individuals were treated more favorably with respect to work plans. Plaintiff's evidence of Putzier's comments to Plaintiff and to Keegan may be probative on the issue of discriminatory motive, but they do not suffice to show more favorable treatment to younger nurses with respect to work plans.

### 2.     "Segregate or classify"

Plaintiff also argues that Putzier's comments about Plaintiff's being "burned out" and about older nurses needing to "move on" constituted an attempt, in violation of the ADEA, to

> limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. § 623(a). Plaintiff asserts that Putzier's opinion that Plaintiff was among the older nurses who needed to be replaced was an employment decision that singled Plaintiff out for less favorable treatment because of her age. Plaintiff relies on *Jauregui v. City of Glendale,* 852 F.2d 1128, 1134 (9th Cir. 1988). In *Jauregui,* a case involving a failure to promote, the court held that a Hispanic police officer established a prima facie case of disparate treatment through evidence that: (1) all persons in supervisory ranks at the police department were white males; (2) the relevant personnel at the police department were aware of Plaintiff's ethnicity; (3) the general policy and practice at the police department had been to promote the person certified first on a

Opinion and Order, Page 6

list of three; (4) although ranked number one on three of the seven occasions in which he was certified for promotion, Plaintiff was never promoted; and (5) the police department had an atmosphere not conducive to inter-ethnic appreciation and respect.

The evidence in the *Jauregui* case that the plaintiff was "singled out" is far more probative than the evidence in this case. In *Jauregui,* the evidence was overwhelming that plaintiff's ethnicity was the only explanation for the failure to promote him, since he had ranked first among the candidates on three occasions and was still passed over for promotion. In contrast to *Jauregui*, Judge Papak found significant evidence in this case that the work plan resulted from Plaintiff's "multiple medical errors affecting patient safety." While Plaintiff has offered evidence that the work plan's requirements made Plaintiff's success unlikely, it is undisputed that Plaintiff worked only seven shifts, two of which were for post-leave reorientation, under the provisions of the work plan. I conclude that there is no evidence showing the work plan was an attempt to segregate, single out, or pass over Plaintiff from the ranks of younger nurses.

### 3. Failure to make other findings

Plaintiff further asserts that Judge Papak erred in recommending dismissal of the age discrimination claim because he never decided whether "Putzier's decision to classify Sheridan as an employee that needed to be replaced; the February 2010 [sic] unreasonable work plan; and the April 2010 [sic] unreasonable work plan and final written warning constituted adverse employment actions."[1] Pl. Obj. to F & R p. 5. Plaintiff argues that the question of whether these incidents were adverse employment actions was "raised by both parties and never ruled on by

---

[1] The work plan at issue in this case was implemented in February 2009. The record indicates that although a second work plan was written in April 2009, it was never implemented because Plaintiff had already resigned.

Opinion and Order, Page 7

the court." *Id.*

Providence counters that: (1) there is no evidence to support Plaintiff's argument that Putzier "classified" Plaintiff as an employee who had to be replaced, and even if there were, there is no evidence to support an argument that the classification was based on Plaintiff's age; (2) Providence never raised on summary judgment the question of whether these "incidents" were adverse employment actions; and (3) Plaintiff herself only minimally addressed the question of whether these alleged actions constituted adverse employment actions, having devoted a single sentence to it in her 35-page brief: "Further, there are issues of fact as to whether plaintiff was subjected to harassment, different treatment, excessive monitoring, unreasonable work plans and a final written warning, all of which constitute adverse employment actions." Pl. Mem. p. 20.

Providence argues that in view of Plaintiff's cursory treatment of the issue, and the fact that her age discrimination claim is framed in her complaint as one for discriminatory termination or wrongful discharge, Judge Papak was under no obligation to address a question posed, essentially, for the first time in Plaintiff's objections to the F & R. I agree.

**B.    Hostile Workplace Claim**

Plaintiff asserts that Judge Papak erred in recommending dismissal of Plaintiff's hostile workplace claim. Providence counters that Plaintiff did not plead such a claim. Plaintiff's fourth claim for relief is that "Defendant harassed, disciplined and constructively discharged plaintiff because of one or more of her age, her disabilities, a false perception of disabilities or because plaintiff opposed unlawful employment practices in the workplace . . . ." Compl. ¶ 43. Judge Papak treated Plaintiff's complaint as asserting a hostile workplace claim.

Opinion and Order, Page 8

Plaintiff argues that Judge Papak erred in concluding that Plaintiff had not presented sufficient evidence of "objectively severe conduct to advance to a jury on her hostile work environment claim." F & R at 32. Judge Papak discussed his conclusion as follows:

> None of the conduct allegedly creating the hostile work environment involved physical threats. Sheridan was subjected to only two arguably discriminatory comments over the course of three years. She was observed intensively at work for at most three days. The allegedly humiliating incidents–the two comments from Putzier, the confrontation with medication errors, and the awkward pause by supervisors when Sheridan requested time to cry–were relatively few and mild. And, Providence's institution of increased supervision and the work plan did not unreasonably interfere with Sheridan's performance; indeed, Providence apparently instituted these measures to improve Sheridan's performance by clearly delineating Providence's expectations of Sheridan and giving her the skills she needed to meet those expectations. Overall, while a reasonable person in Sheridan's position might have felt considerable pressure to demonstrate improved performance, there is no dispute that Providence did not subject Sheridan to objectively offensive conduct creating a hostile work environment.

F & R at 32.

To assert a hostile workplace claim under the ADEA, Plaintiff must meet the same requirements as for a hostile workplace claim under Title VII: the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class. *Sischo-Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Trans. Dist.,* 424 F.3d 1027 (9th Cir. 2005). A hostile workplace claim requires a plaintiff to prove that the workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998). The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998).

Opinion and Order, Page 9

Plaintiff argues that Judge Papak did not evaluate the severity of Providence's conduct from the perspective of a person "in the plaintiff's position," considering "all the circumstances," as required by *Oncale*. She argues that those circumstances include "facts known to Plaintiff" about the Unit, including knowledge that Putzier was engaged in an effort to replace older nurses, that Putzier had told Plaintiff she was "burnt out" and "don't let the door hit you on the way out," and Plaintiff's personal observation of a pattern of targeting older nurses on the unit in ways not applied to younger nurses.

Plaintiff has misread *Oncale*. That case does not support Plaintiff's argument that her subjective feelings or perceptions are circumstances to be considered in evaluating whether a working environment is *objectively* hostile. As the Court said, "[T]he *objective* severity of harassment should be judged *from the perspective of a reasonable person* in the plaintiff's position, considering "all the circumstances." 523 U.S. at 81. (Emphasis added) The Court therefore required "careful consideration of the social context in which particular behavior occurs and is experienced by its target," noting that the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." 523 U.S. at 81, 82. The Court observed that a "professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field–even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office." *Id.*

The "circumstances" referred to by the Court in *Oncale* are social contexts, expectations, and relationships. They may also be the gender or racial or ethnic group of the plaintiff. *See McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1115 & n. 8 (9th Cir. 2004) (allegations of racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff). But the test for whether a workplace is objectively hostile is not met by the Plaintiff's subjective feelings about her supervisor's motives or perceptions of her supervisor's conduct.

In addition, to be actionable, hostile conduct must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. *Nichols v. Azteca Rest. Enter.,* 256 F.3d 864, 872 (9th Cir. 2001). Putzier's single comment to Keegan was not objectively abusive because it was not directed at Plaintiff. Putzier's "burnt out" and "don't let the door hit you" comments, made some years before Plaintiff's employment ended, do not meet the standard for severity or pervasiveness. *See Harris,* 510 U.S. at 21 ("mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment); *Nichols,* 256 F.3d at 872 (Factors to be considered in evaluating objective hostility of work environment include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."); *Vasquez,* 349 F.3d at 643 (two offensive statements made more than six months apart and yelling at plaintiff twice not sufficiently severe or pervasive).

Plaintiff argues that one of the "circumstances" Judge Papak did not address was that "plaintiff was working under an unreasonable work plan designed to virtually ensure her failure." Judge Papak did, however, address that circumstance, holding that the "work plan did not unreasonably interfere with Sheridan's performance," and that it had been instituted to "improve Sheridan's performance by clearly delineating Providence's expectations." The finding was based on evidence in the record of numerous complaints about Plaintiff's conduct and behavior toward patients and their families, and that Plaintiff was doing her charting after the fact at the front desk, rather than in real time, as required.

Judge Papak's finding that Plaintiff had offered "substantial circumstantial evidence" that the work plan had a discriminatory motive does not undermine Judge Papak's conclusion that Plaintiff had not made out the objective element of her hostile workplace claim. Motive and pretext are elements of a disparate treatment claim, but they are not elements of a hostile workplace claim. *See EEOC v. Nat'l Educ. Ass'n, Alaska,* 422 F.3d 840, 845 (9th Cir. 2005) ("[A] pattern of abuse in the workplace, directed at women, *whether or not it is motivated by "lust" or by a desire to drive women out of the organization,* can violate Title VII.") (Emphasis added)

A hostile workplace claim requires proof that the workplace was both objectively and subjectively abusive enough to alter the terms of Plaintiff's employment. *Faragher,* 524 U.S. at 787. Judge Papak did not err when he concluded that Plaintiff had not demonstrated the objective element of this claim. Evidence of a discriminatory motive on the part of Providence in implementing the work plan does not create a genuine issue for trial on whether the workplace was abusive enough to alter the terms of Plaintiff's employment.

Opinion and Order, Page 12

Plaintiff also argues that Judge Papak failed to consider the evidence of Plaintiff's disability in his hostile workplace findings. Plaintiff offered testimony that she suffered from depression and an anxiety disorder during the time she was on the work plan. Plaintiff argues that the managerial methods on the Unit were "aggravating and worsening Ms. Sheridan's major depression and interfering in her work performance." Pltf. Mem. at 10. As Providence points out, however, Judge Papak evaluated the hostile workplace claim as one for age discrimination. F & R at 35. Providence takes issue with Plaintiff's delayed assertion that evidence of Plaintiff's disability was relevant to Judge Papak's evaluation of the hostile workplace claim.

Even if the court assumes that Plaintiff's hostile workplace claim was based on disability rather than (or even in addition to) age discrimination, proof that workplace performance pressures aggravated her symptoms or contributed to Plaintiff's erratic conduct and charting difficulties does not satisfy the objective element of a hostile workplace claim. The deficiency of Plaintiff's proof on this element is further demonstrated by the evidence that the work plan was implemented because Plaintiff had made multiple medical errors affecting patient safety–a compelling consideration for Providence.

## C.     Constructive Discharge Claim

Plaintiff objects to Judge Papak's recommendation that Providence be awarded summary judgment on her constructive discharge claim, arguing, first, that all her objections about the hostile workplace claim also apply to consideration of the constructive discharge claim. She asserts that a reasonable older woman suffering from depression would feel compelled to resign when faced with these circumstances: (1) the manager of the Unit is engaged in a prolonged effort to replace older nurses; (2) the manager had included Plaintiff in the group of older nurses

Opinion and Order, Page 13

targeted for replacement; (3) the manager had placed Plaintiff under excessive monitoring and supervision and denied benefits to advance her career; (4) the manager placed the woman on unreasonable work plans designed to ensure failure; and (5) the management methods were aggravating the employee's depression.

Plaintiff's argument is unpersuasive. First, the test for constructive discharge is an objective one. A constructive discharge occurs when a person quits his or her job under circumstances in which a reasonable person would feel that the conditions of employment had become intolerable. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998). The question of whether a severely depressed plaintiff might believe the conditions of her employment to be intolerable is not probative to constructive discharge with regard to what a "reasonable person" would feel.

Second, as Judge Papak pointed out, his conclusion that Plaintiff could not survive summary judgment on the hostile work environment claim precluded a constructive discharge claim as a matter of law because constructive discharge requires a higher level of proof than hostile work environment. *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir. 2000) ("Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job.")

## V. CONCLUSION

I ADOPT Judge Papak's Findings and Recommendation. Accordingly, Providence's motion for summary judgment (Doc. # 23) is GRANTED with respect to Plaintiff's first and fourth claims (age discrimination, disability discrimination, perceived disability discrimination,

and retaliation) and DENIED with respect to Plaintiff's second and third claims (ADA and Oregon law for failure to provide reasonable accommodation and FMLA and OFLA claim).

IT IS SO ORDERED.

Dated this 29th day of December, 2011.

/s/ Michael H. Simon<br>
Michael H. Simon<br>
United States District Judge